IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02181-CBS

CHESTER HUGGINS,

       Plaintiff,

v.

JOHN REILLY,

       Defendant.

---

**ORDER REGARDING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

---

Magistrate Judge Shaffer

       This civil action comes before the court on Defendant John Reilly's Motion for Summary Judgment and attached exhibits (doc. #46), filed on August 21, 2015.  The *pro se* Plaintiff, Chester Huggins, filed his Respond (sic) to Defendant's Motion for Summary Judgment and attached exhibits (doc. #52) and an Motion to Amended (sic) Plaintiff Respond (sic) Motion to Defendant Motion for Summary Judgment (doc. #51) on October 2, 2015.  In addressing the pending motion, I have also reviewed and considered Mr. Huggins' Discovery Evidence (doc. #42) and Plaintiff's own Declaration (doc. #43), as well as the declarations of inmates Joseph W. Rodgers (doc. #44) and Ralph Jackson (doc. #45).  At the court's request, Mr. Huggins filed a Supplemental Briefing and attached exhibits (doc. #57) on February 1, 2016, which prompted Defendant's Response to Plaintiff's Supplemental Brief and related exhibits (doc. #60) on February 5, 2016.

1

The parties consented (doc. #18 and #22) to the magistrate judge's jurisdiction to "conduct all further proceedings in this civil action, including trial, and to order the entry of a final judgment," pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D.C.COLO.LCivR 72.2. Accordingly, the case was referred to this court on December 3, 2014. The court has carefully considered the parties' briefs and attached exhibits, the entire case file, and the applicable law and is sufficiently advised in the premises. For the following reasons, Mr. Huggins' failure to fully exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires this court to grant Defendant's motion and dismiss this action.

**PROCEDURAL BACKGROUND**

Mr. Huggins commenced his lawsuit on August 6, 2014, by filing a Complaint that asserted claims pursuant to 42 U.S.C. § 1983. Plaintiff's claims arose from his employment from 1998 through 2013 as a sewer in the Colorado Correctional Industries Garment Factory (hereinafter "the Garment Factory") located at Limon Correctional Facility in Limon, Colorado. According to the Complaint, in 2011 the Garment Factory was selected to become a certified Cost Accounting Center under the Prison Industry Enhancement Certification Program (PIECP). Under this Program, the Garment Factory was permitted to sell goods to private consumers across State borders and receive funding from the federal government and Colorado's Department of Labor and Employment. Inmates participating in PIECP and "on the clock" are eligible to receive a minimum wage that exceeds the 90 cents per day paid to workers on the BDU/regular line in the Garment Factory.

In seeking compensatory and punitive damages, Mr. Huggins asserts two claims for

relief. The first claim alleges a violation of the Fourteenth Amendment and the Equal Protection Clause. More specifically, Plaintiff contends that prior to PIECP, Defendant Reilly, as Head Manager/Supervisor, "chose to employee (sic) primarily white inmates in the most desirable jobs" in the Garment Factory. After PIECP was implemented, Defendant Huggins allegedly selected four white inmates for the initial minimum wage positions, even though three of those individuals had no sewing experience. Mr. Huggins acknowledges that during this initial phase, he also was accepted into PIECP, "but he was not permitted to actually be assigned to the minimum wage work." *See* Complaint, at ¶ 7. The Complaint further alleges that

> After December of 2011, PIECP went into full operations at the Factory. Fifteen workers were assigned by Mr. Reilly to the program. The workers were divided into "full time" and "part time" – full time workers could punch in on clock every day, while part time workers could only punch on when there was a large order and extra help was needed. Of the fifteen PIECP workers, fourteen were assigned by Mr. Reilly to full time. All of these fourteen were white. The remaining worker was a black part timer. Shortly after PIECP began full operations, Mr. Huggins was moved to the BDU line, which was where the PIECP part time workers were assigned when they were not on the clock.

*Id.* at ¶¶ 8 and 9.

After six months, Mr. Huggins complained that Defendant Reilly was only assigning white inmates to the full-time minimum wage projects. Thereafter, Mr. Huggins was allowed to work on part-time PIECP projects. When he complained directly to Mr. Reilly, Plaintiff allegedly was told that he could "work in the kitchen if you don't like it." *Id.* at ¶ 10. The Complaint avers that for a brief period, while Defendant Reilly was on vacation, the acting supervisor allowed black inmates to work three hours a day on PIECP. But when Mr. Reilly returned, "he was upset about the schedule change and he immediately stopped working the blacks – including Mr. Huggins." *Id.* at ¶ 11.

Plaintiff's second claim for relief accuses Defendant Reilly of retaliation in violation of the First Amendment. In this claim, Mr. Huggins alleges that after he filed a grievance challenging Defendant's discriminatory assignment practices, Mr. Reilly gave him a formal assessment that rated Plaintiff's work as "poor." Mr. Huggins maintains that prior to this evaluation, his work consistently had been rated as "good" or better. However, Mr. Reilly responded to the initial informal grievance by claiming that Mr. Huggins had not been selected for the minimum wage positions because he was a poor worker. *Id.* at ¶ 13. The Complaint avers that "[a]fter submitting his grievances, Mr. Huggins was moved completely off of the PIECP by Mr. Reilly." *Id.* at ¶ 16. Thereafter, Mr. Huggins was transferred to Sterling Correctional Facility in Sterling, Colorado, and, as a result, lost his employment in the Garment Factory. Mr. Huggins contends that had he not complained about Mr. Reilly's assignment practices, "he would never have been scrutinized, given unfair work evaluations, moved off of the PIECP, and (ultimately) moved out of" Limon Correctional Facility.

Defendant Reilly moved for summary judgment on August 21, 2015, arguing that Mr. Huggins has not come forward with facts to support his Equal Protection claim and, more specifically, any evidence showing that he was removed from the Garment Factory or the PIECP program because of his race. Mr. Reilly further contends that Plaintiff's First Amendment retaliation claim is based on nothing more than speculation and that Mr. Huggins cannot show a causal connection between his complaints and any adverse actions taken by Defendant Reilly. Finally, the pending motion for summary judgment asserts that Mr. Huggins failed to properly exhaust his administrative remedies prior to commencing this litigation, in violation of the Prison Litigation Reform Act.

## ANALYSIS

"Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." *Montgomery v. Board of County Commissioners of Douglas County, Colorado*, 637 F. Supp. 2d 934, 939 (D. Colo. 2009) (internal quotation marks and citations omitted).

The burden of persuasion under Rule 56 requires the moving party to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact, given the relevant substantive law." *Thomas v. Wichita Coca-Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  A fact is "material" if under the substantive law it could have an effect on the outcome of the lawsuit. *Equal Employment Opportunity Comm'n v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000) (citing *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 248 (1986)).  While the moving party bears the initial burden of showing that there is an absence of any issues of material fact, *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991), the movant need not negate the non-movant's claim.  *See John Hancock Mut. Life Ins. Co. v. Weisman*, 27 F.3d 500, 503 (10th Cir. 1994); *Universal Money Ctrs., Inc. v. American Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994).  Once the moving party points to an absence of evidence to support the non-moving party's claim, the non-moving party may not rest upon his pleadings, but must come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case.  *See* Fed. R. Civ. P. 56(e).  *See also Kannady v. City of*

*Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

To defeat a properly supported motion for summary judgment, there must be evidence upon which the jury could reasonably find for the plaintiff.  *See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'").  Conclusory allegations will not create a genuine issue of material fact necessitating trial.  *Dobson v. City and County of Denver*, 81 F. Supp. 2d 1080, 1083 (D. Colo. 1999).  *Cf. Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (acknowledging "conclusory allegations without specific supporting facts have no probative value").  Similarly, evidence that is not significantly probative and immaterial factual disputes will not defeat a motion for summary judgment.  *Ayon v. Gourley*, 47 F. Supp. 2d 1246, 1252 (D. Colo. 1998).  The demonstration of "some metaphysical doubt as to the material facts" is not sufficient to establish a genuine issue of material fact.  *Foreman v. Richmond Police Department*, 104 F.3d 950, 957 (7th Cir. 1997). After construing the factual record and drawing all reasonable inferences therefrom in the light most favorable to the non-moving party, *Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 851 (10th Cir. 1996), the court ultimately must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.  "The very purpose of a summary judgment action is to determine whether trial is necessary." *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  In short, this court must determine whether Mr. Huggins has come forward with specific facts to demonstrate a genuine issue of material facts on the issue of whether he properly complied with the PLRA's exhaustion requirement.

In addressing the pending motion, I recognize that "a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Hall*, 935 F.2d at 1110 n. 3 (citations omitted). "[S]uch liberal construction is intended merely to overlook technical formatting errors and other defects in Plaintiff's use of legal terminology and proper English." *Smith v. Krieger*, 643 F. Supp. 2d 1274, 1279 (D. Colo. 2009) (citation omitted). The court cannot be a pro se litigant's advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n. 1 (10th Cir. 2008).

A failure to exhaust administrative remedies constitutes an affirmative defense which must be pled and proved by the defendant. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). Defendant Reilly has submitted evidence that Mr. Huggins failed to properly complete the grievance process as to the claims remaining in this lawsuit. Therefore, the burden shifts to Mr. Huggins to show, by tendering competent evidence, that summary judgment is not proper. If he fails to demonstrate with specificity the existence of a disputed material fact, the affirmative defense bars his claim, and Defendant Reilly is entitled to summary judgment as a matter of law. *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997).

The Colorado Department of Corrections' Administrative Regulation No. 850-04 (hereinafter "AR 850-04") establishes a grievance procedure for inmates. *See* Exhibit A (doc. #24-1, at page 2 of 19) attached to Defendant's Reply Brief in Support of his Motion to Dismiss. In deciding the instant motion, this court may take judicial notice of the Department's administrative process. *See Ray v. Aztec Well Service Co.*, 748 F.2d 888, 889 (10th Cir. 1984)

(court may take judicial notice of agency rules and regulations); *Muniz v. Kaspar*, No. 07-cv-01914-MSKMJW, 2008 WL 3539270, at *3 (D. Colo. Aug. 12, 2008) (taking "judicial notice of AR 850-04, the administrative regulation describing the grievance process"). Under AR 850-04, an inmate is required to successively file a Step 1 grievance, a Step 2 grievance, and a Step 3 grievance. A Step 1 grievance must be filed no later than thirty calendar days after the date the inmate knew, or should have known, of the facts giving rise to the grievance, and the offender should receive a response to their Step 1 grievance within 25 calendar days of its receipt by the case manager. *See* AR 850-04 Section IV. F. 1.a and b. When an inmate wishes to proceed to the next step in the grievance process, the offender shall file a Step 2 written grievance "within five calendar days of receiving the written response to the previous step." *See* AR 850-04 Section IV. F.1 c. "In the event the time limit concerning any step of the process expires without a response, the offender may proceed to the next step within five calendar days of the date the response was due." *See* AR 850–04 IV. F. 1. e. A Step 3 grievance is the final step in the grievance process and the decision of the grievance officer on a Step 3 grievance is the final agency action. *See* AR 850–04 IV. E. 3. c. 4. In this case, Defendant Reilly contends that Mr. Huggins failed to comply with time limits established in AR 850-04 and, therefore, his Equal Protection and First Amendment retaliation claims were not properly exhausted.

The Prison Litigation Reform Act specifically states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a). This "exhaustion requirement is designed to afford [ ] corrections officials time and opportunity to address

complaints internally before allowing the initiation of a federal case." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) ("a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought") (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002), *overruled in part on other grounds by Bell Atlantic v. Twombly*, 550 U.S. 544, 563 (2007)).

It is well-established that "exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The PLRA requires "proper exhaustion" of administrative remedies, which means the plaintiff must utilize all administrative remedies provided and must comply with the deadlines and other procedural rules prior to filing a federal lawsuit relating to the conditions of his confinement. *Woodford v. Ngo*, 548 U.S. 81, 85, 90-91 (2006)) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

"[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, – rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (internal quotation marks and citation omitted). *Cf. Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) ("To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." ). Thus, it is the prison's own grievance procedures that set forth what the prisoner must do in order to exhaust his or her administrative remedies. *Jones*, 549 U.S. at 218 (citation omitted). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id. See also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) ("Because the prison's procedural

requirements define the steps necessary for exhaustion, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure.") (citation omitted).      It is undisputed that Mr. Huggins filed a Step 1 grievance on June 26, 2013 while still at Limon Correctional Facility.  That Step 1 grievance asserted that Mr. Huggins had been denied "equal opportunities" for minimum wage assignments in the PIECP program based on his race and age.  Plaintiff specifically asked that he "be [paid] for not allowing the opportunities that was allowed to the caucasian offenders . . . with no retaliation when this is conclude[d]").  *See* Exhibit G (doc. #46-7, at page 5 of 10), attached to Defendant's Motion for Summary Judgment.  Plaintiff received a written response to this Step 1 grievance on July 12, 2013.  In that response, Defendant Reilly indicated that the decision to limit Plaintiff's "PIE work time is based on his skills and ability and not racially motivated."  *Id.*

It is also undisputed that Mr. Huggins submitted his Step 2 grievance on July 19, 2013, seven days after receiving a response to his Step 1 grievance.  *See* Exhibit G (doc. #46-7, at page 4 of 10), attached to Defendant's Motion for Summary Judgment.  Plaintiff received a response to his Step 2 grievance on or about August 2, 2013 after he arrived at Sterling Correctional Facility.  Mr. Huggins filed his Step 3 grievance form on August 9, 2013.  *See* Exhibit G (doc. #46-7, at page 2 of 10), attached to Defendant's Motion for Summary Judgment.

 On September 12, 2013, Anthony DeCesaro, the Department of Corrections's Step 3 Grievance Officer, advised Mr. Huggins that he had received Plaintiff's Step 3 grievance claiming racial disparity in PIECP assignments.  Mr. DeCesaro concluded, however, that:

> Your grievance is filed out of time.  The time frame for filing grievances is outlined in Administrative Regulation 850-04.  You have five calendar days in which to file the next step in the grievance process.  You received the Step 1 response on 7/12/13 and your Step 2 was not filed until 7/19/13.  You have failed

10

>to follow the grievance procedure in this matter; you have <u>not</u> exhausted your administrative remedies.

*See* Exhibit G (doc. #46-7, at page 1 of 10), attached to Defendant's Motion for Summary Judgment. *Cf. Woodford*, 548 U.S. at 90 (noting that proper exhaustion of administrative remedies requires compliance with all steps of that administrative process, including "deadlines and other critical procedural rules").

Mr. Huggins initially suggested that his failure to comply with the mandatory five-day deadline was caused by the fact that inmates at Limon Correctional Facility were locked down during the relevant time period which prevented him obtaining the required grievance form. In his Supplemental Briefing (doc. #57), however, Plaintiff now states that Limon Correctional Facility was locked down and inmate movement was restricted from July 10, 2013 to July 15, 2013.[1] He also concedes that his case manager provided him with the necessary grievance form on July 15, 2013, which meant that Mr. Huggins had two days in which to complete and submit a timely Step 2 grievance. Unfortunately, Plaintiff missed that required deadline.

I recognize that while an inmate is required to take full advantage of available administrative remedies, an administrative remedy may be found to be unavailable where prison

---

[1] Defendant has presented an affidavit from the Administrative Services Manager at Limon Correctional Facility stating that the Department of Correction's electronic database does not show any lock downs occurring at Limon Correctional Facility during the period from July 10, 2013 to July 15, 2013. *See* Affidavit of Ryan Long (doc. #60-1), attached to Defendant's Response to Plaintiff's Supplemental Brief. Mr. Huggins' former case manager at Limon Correctional Facility also indicates that even if the facility was on lock down, Mr. Huggins could have requested a grievance form by submitting a kit to a correctional officer. *See* Affidavit of Roberta Walters (doc. #60-3), attached to Defendant's Response to Plaintiff's Supplemental Brief. Even assuming a factual dispute as to whether Limon Correctional Facility was locked down for some period of time, that dispute is not material to the pending motion given the fact that Mr. Huggins acknowledges receiving a Step 2 grievance form two days before the time limit in AR 850-05 lapsed.

authorities prevent an inmate from complying with the applicable grievance procedure. *Cf. Roscoe v. Dodson*, No. 1:CV-05-2547, 2007 WL 328605, at *4 (M.D. Pa. Jan. 31, 2007). That is not the case here. Mr. Huggins' failure to meet the deadlines mandated by AR 850-04 cannot be blamed on facility security measures that were no longer in effect as of July 15, 2013. *Cf. Mower v. Swyhart*, 545 F.2d 103, 104 (10th Cir. 1976) ("Where [an] administrative remedy is clearly available, it would be totally inappropriate for [a] court to interfere in the internal administration of [a] prison."). Moreover, Plaintiff has not come forward with any evidence to suggest that the staff at Limon Correctional Facility prevented him from complying with the filing deadlines in AR 85-04. *Cf. Garcia v. Wright*, No. 11-cv-02722-RM-KLM, 2013 WL 3381269, at *6 (D. Colo. Jul. 8, 2013) (noting that "the decisions of the Supreme Court and the Court of Appeals for the Tenth Circuit have made it very clear that compliance with prison grievance procedures must be exact"). The court must find, based on the undisputed record, that Mr. Huggins failed to exhaust his administrative remedies with respect to his Equal Protection claim. *Cf. Hardaway v. Y. Franco*, No. 12-5885 RMW (PR), 2015 WL 3986147, at *1 (N.D. Cal. June 30, 2015) (where the defendant moves for summary judgment claiming a failure to exhaust administrative remedies and sustains his initial burden of showing that administrative remedies were available and were not exhausted by the plaintiff, the prisoner must then come forward "with evidence showing that there was something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him").

Mr. Huggins was transferred from Limon Correctional Facility to Sterling Correctional Facility on August 2, 2013. On September 24, 2013, Plaintiff submitted an "Informal Resolution Form" in which he complained of discrimination and retaliation. In his Informal Resolution

12

Form, Mr. Huggins stated that he had been transferred from Limon Correctional Facility in retaliation for asserting his earlier discrimination claim. Defendant Reilly signed the Informal Resolution Form on October 2, 2013. Plaintiff filed a Step 1 grievance form on October 9, 2013, claiming two members of the Limon staff had warned that Defendant Reilly would retaliate against him for filing a discrimination claim. *See* Exhibit G (doc. #46-7, at page 10 of 10), attached to Defendant's Motion for Summary Judgment. Mr. Huggins received a response to this Step 1 grievance on October 30, 2013. Eight days later, on November 7, 2013, Mr. Huggins filed a Step 2 grievance, again claiming that he had been transferred from the PIECP program and Limon Correctional Facility in retaliation for challenging discriminatory practicing. Mr. Huggins received a written response to this Step 2 grievance on November 22, 2013. *See* Exhibit G (doc. #46-7, at page 9 of 10), attached to Defendant's Motion for Summary Judgment. Plaintiff submitted his Step 3 grievance on November 27, 2013, alleging his First Amendment rights had been violated when he was removed from the PIECP minimum wage program and given "a lower paying assignment" immediately after he alleged racial and age discrimination. *See* Exhibit G (doc. #46-7, at pages 7 and 8 of 10), attached to Defendant's Motion for Summary Judgment.

On January 9, 2014, Anthony DeCesaro denied Plaintiff's Step 3 grievance challenging his transfer from Limon Correctional Facility to Sterling Correctional Facility. As Mr. DeCesaro explained,

> Your grievance is filed out of time. The time frame for filing grievances is outlined in Administrative Regulation 850-04. You have five calendar days in which to file the next step in the grievance process. You received the Step 1 grievance response on 10/30/13 and your Step 2 was not filed until 11/7/13. Your grievance is filed out of time. . . . You have thirty days from when you knew or should have knwon of the facts giving rise to this grievance. This action occurred

> 8/2/13 and you did not file the Step 1 grievance until 10/9/13. . . . You have failed to follow the grievance procedure in this matter; you have not exhausted your administrative remedies.

*See* Exhibit G (doc. #46-7, at page 6 of 10), attached to Defendant's Motion for Summary Judgment.

Mr. Huggins has explained that he waited to submit his October 9, 2013 Step 1 grievance because he thought perhaps "other guys that worked on the [PIECP] Line" would also be transferred "but none came after me." According to Plaintiff, "it took me a while to know for sure with the facts before I decided to file my Federal retaliation claim" and October 10, 2013 was "the date I knew for sure of the facts."[2]

Those arguments, however, are not supported by the factual record and contrary to the clear requirements of AR 850-04. Mr. Huggins' Step 2 grievance, filed on October 1, 2013, alludes to two staff members at Limon Correctional Facility who allegedly predicted that Defendant Reilly would take retaliatory action in response to Mr. Huggins' claim of discrimination. Those warnings presumably occurred before Mr. Huggins was transferred to Sterling Correctional Facility on August 2, 2013. More to the point, any initial lack of information does not excuse Mr. Huggins' failure to file his Step 2 grievance in a timely

---

[2]To comply with AR 850-04, an inmate must "clearly state the basis for the grievance and the relief requested in the space provided on the form." Nothing in the Administrative Regulation requires an inmate to state all the relevant facts or circumstances underlying the grievance. To the contrary, a "grievance satisfies the . . . exhaustion requirement so long as it provides prison officials with enough information to investigate and address the inmate's complaint internally." *Kikumura v. Osagie*, 461 F.3d 1269, 1285 (10th Cir. 2006), *overruled on other grounds by Robbins v. Oklahoma,* 519 F.3d 1242 (10th Cir. 2008).

manner.³  The latter omission is particularly notable given Mr. DeCesaro's letter of September 12, 2013 which specifically found that Plaintiff had not met the required administrative deadlines by failing to file his earlier Step 2 grievance within the mandatory five-calendar day period. Certainly by September 12, 2013, Mr. Huggins was on notice that strict compliance with the timing requirements in AR 850-04 was required in order to meet exhaustion requirements.  I must find, based upon the foregoing undisputed facts, that Plaintiff failed to properly exhaust his administrative remedies as to his First Amendment retaliation claim.

In sum, Mr. Huggins has failed to sustain his burden of demonstrating a genuine issue of material fact as to whether he properly exhausted his administrative remedies.  *Cf. Frazier v. Miller*, No. 14-cv-02766-CMA-MJW, 2015 WL 3466831, at *2 (D. Colo. May 29, 2015) (holding that plaintiff's claims were properly dismissed based upon his failure to fully exhaust his administrative remedies in compliance with AR 850-04).   The court will therefore grant Defendant's Motion for Summary Judgment and Mr. Huggins claims against Mr. Reilly are dismissed without prejudice.⁴

---

³Although Mr. Huggins has not suggested that his ability to exhaust was adversely impacted because inmates were locked down at Sterling Correctional Facility, Department records indicate that prison was briefly locked down on November 7, 9 and 13, 2013. *See* Affidavit of Raymond Higgins (doc. #60-4), attached to Defendant's Response to Plaintiff's Supplemental Brief.  Mr. Huggins filed his Step 2 grievance form on November 7, 2013, after the mandatory five-calendar day time limit had expired.

⁴Because the court is deciding the pending motion on the narrow issue of exhaustion, it does not reach the other defenses raised in Defendant Reilly's Motion for Summary Judgment.

Dated this 18th day of February, 2016.

                              BY THE COURT:

                              s/ Craig B. Shaffer
                              United States Magistrate Judge